UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD KING,<br><br>   Petitioner,<br><br>  v.<br><br>SCOTT FRAUENHEIM,<br><br>   Respondent. | Case No. 14-cv-05267-SI<br><br>**ORDER DENYING MOTION TO AMEND AND DENYING STAY; REQUIRING INDEX TO TESTIMONY**<br><br>Re: Dkt. No. 25 |

This *pro* se action for a writ of habeas corpus is now before the court for consideration of James Edward King's motion to file an amended petition and for a stay. Upon due consideration, the court determines that the proposed new claim is untimely and therefore denies the motion to amend. It is unnecessary to stay the action so that King may exhaust state court remedies because that proposed new claim will not be considered in his federal habeas action.

**BACKGROUND**

A. Procedural History

In 1997, King was convicted of four sex crimes and sentenced to a prison term of 35 years to life. In 2009, this court granted King's petition for writ of habeas corpus and ordered that he be re-tried or released from custody. *See King v. Evans*, Case No. C 00-1988. According to King, after he rejected a plea offer from the prosecutor, a second trial was held.

At the second trial, King was convicted in Monterey County Superior Court of rape of a child under age 14, oral copulation on a child under age 14, penetration with a foreign object on a child under age 14, and committing a lewd act with a child under age 14. On April 13, 2010, he was sentenced to a term of 35 years to life in prison.

King appealed and sought collateral relief in the state courts following the 2010 conviction. The California Court of Appeal affirmed the judgment of conviction and denied his petition for review. The California Supreme Court denied his petition for review and his petition for writ of habeas corpus on April 23, 2014. *See* Resp. Exs. J and P.

King then filed this action on December 1, 2014. Although King signed the petition weeks earlier, he did not mail the petition to the court and instead sent it to his attorney to file.[1] He therefore does not receive the benefit of the prisoner mailbox rule, and the actual filing date (rather than any mailing date) is the filing date for statute of limitations purposes. *See Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (to benefit from the mailbox rule, a prisoner must be proceeding without assistance of counsel *and* must deliver his filing to prison authorities for forwarding to the court).

B.   The Federal Habeas Claims

The original federal petition for writ of habeas corpus alleged the following claims: (1) the trial court violated King's right to a fair trial by permitting the victim to testify to her motive for testifying; (2) the trial court violated King's Sixth Amendment right to cross-examine witnesses by terminating the recross-examination of the victim; (3) the trial court violated King's Sixth Amendment Confrontation Clause rights by admitting prior statements and testimony from the victim; (4) the trial court violated King's Sixth Amendment Confrontation Clause rights by refusing to let him cross-examine the victim with an excerpt of her police interview; (5) the trial court violated King's right to a fair trial by allowing evidence that child sexual abuse allegations rarely are false; (6) King's right to a fair trial was violated when a videotape interview of the victim was given to the jury; and (7) the trial court violated King's Sixth and Fourteenth Amendment rights by refusing to hold a hearing on alleged juror misconduct. The original petition did not cite *Strickland v. Washington*, 466 U.S. 668 (1984), or allege an ineffective

---

[1] The petition has a signature date of October 21, 2014, but was not sent by King to the court at that time. Attorney Matthew Alger mailed the petition to the court on November 21, 2014. Docket Nos. 1-5, and 4.

2

assistance of counsel claim.

C. The Motion To Amend And Stay Proceedings

On September 30, 2015, King filed a motion to file an amended petition and for a stay of the proceedings. King wants to add Claim 8 to the seven claims alleged in the original petition, and wants to have these proceedings stayed so that he may exhaust state court remedies for that eighth claim. The proposed Claim 8 alleges that King's Sixth Amendment right to the effective assistance of counsel was violated because "trial counsel failed to present evidence that in a prior allegation of sexual abuse, the complaining witness said she saw the time on a clock and was taken to a convenience store--although she said the same things about the incident involving petitioner." Docket No. 25-1 at 7.[2]

Respondent opposes the motion. Respondent argues, among other things, that the amendment should not be permitted because the claim does not relate back to the claims in the original petition, and the claim was not filed within the one-year limitations period. Respondent further argues that staying this action to enable King to pursue state court remedies for an untimely and meritless claim is not appropriate.

**DISCUSSION**

A. Claim 8 Does Not Relate Back

Respondent argues that Claim 8 of the amended petition is time-barred. Respondent concedes that Claims 1-7 are timely because they were in the original petition filed before the statute of limitations period expired. Respondent argues that Claim 8 in the amended petition is time-barred because the limitations period expired before the amended petition was filed. The first matter to decide is whether Claim 8 relates back to the original petition because, if it does, it would be timely because the original petition was timely.

---

[2] The proposed first amended petition was filed on September 30, 2015. The pleading has a signature date of September 22, 2015, and was mailed to the court by attorney Matthew Alger for filing on September 29, 2015. Docket No. 25-1 at 8, Docket No. 25-12.

A claim that is first presented in an amended petition filed after the one-year statute of limitations has expired relates back to the date of the original pleading only if the original and amended pleadings "'ar[i]se out of the conduct, transaction, or occurrence.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (alteration in original) (quoting Fed. R. Civ. P. 15(c)(2)). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. at 650 (new coerced confession claim did not relate back to the original petition that raised only a factually distinct Confrontation Clause claim). *Mayle* explicitly rejected the proposition that the "same 'conduct, transaction, or occurrence' [means the] same 'trial, conviction, or sentence.'" *Id.* at 664. Only if the original and amended petitions state claims that are tied to a common core of operative facts will the new claim in an amended petition relate back to the filing date of the original petition. *See id*. at 664-65. *Compare Rhoades v. Henry,* 598 F.3d 511, 519-20 (9th Cir. 2010) (district court properly denied leave to amend petition to add claims arising out of alleged misconduct of the prosecutors in another case against defendant based on FBI lab testing because those claims did not relate back to other timely-filed claims about police questioning at the time of his arrest, jailhouse informant testimony, and judicial bias), *and Hebner v. McGrath*, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (district court did not err by denying leave to amend petition where original claim challenged admission of evidence at trial and new claim challenged jury instruction concerning consideration of that evidence; they were two discrete occurrences dependent upon separate transactions not sharing a common core of operative facts), *with Valdovinos v. McGrath*, 598 F.3d 568, 575 (9th Cir. 2010), *judgment vacated on other grounds, Horel v. Valdovinos*, 562 U.S. 1196 (2011) (*Brady* claim in amended petition related back to *Brady* claim in original petition where revision added newly discovered evidence that had not been disclosed by prosecutor; both the original and amended claims were "of the same type" in that both pertained to suppressed exculpatory evidence the government had in its file), and *id.* at 575-76 (ineffective assistance of counsel claim in amended petition related back to ineffective assistance of counsel claim in original petition where both claims pertained to counsel's alleged failure to adequately investigate suppressed exculpatory evidence upon learning

4

1    of it and amended claim "simply adds more evidence that counsel did not uncover").

2        Upon comparing Claim 8 in the amended petition with the claims in the original petition,
3    the court concludes that Claim 8 does not relate back because it does not arise out of the same
4    "conduct, transaction, or occurrence" as any of the seven claims in the original petition.  The
5    claims in the original petition have no common core of operative facts with the ineffective
6    assistance of counsel claim in the amended petition.  Although some of the original claims
7    pertained to efforts to undermine the credibility of the victim, that alone does not show them to be
8    based on a common core of operative facts.  The testimony of J., the victim, apparently spanned
9    hundreds of pages of the reporter's transcript, and King has not shown that any of the claims in the
10   original petition pertained to the same line of impeachment as Claim 8, which focuses on the
11   allegedly unbelievable parallel of the details (i.e., that she looked at a clock and went to a store)[3]
12   between J.'s trial testimony against King and a complaint she had made against another man in
13   Colorado years earlier.

14       The nearest claim to Claim 8 is Claim 2 of the original petition, which argued that King's
15   Sixth Amendment right to cross-examine witnesses was violated when his recross-examination of
16   J. was cut short by the trial court.  Claim 8 does not relate back to Claim 2, however, because the
17   claims are based on two different legal rights and different facts.  They rely on two different
18   protections in the Sixth Amendment: Claim 2 is based on a defendant's right "to be confronted
19   with the witnesses against him," whereas Claim 8 is based on a defendant's right "to have the
20   assistance of counsel for his defence."  U.S. Const. amend. VI.  Moreover, Claim 2 urges that the
21   trial court erred in cutting short King's *re*cross-examination of J., but does not show that any
22   earlier direct or redirect examination inquired about the clock and the store similarities, such that

---

[3] During an interview by police in Colorado in 1994 concerning J.'s report of a sexual assault by a man named Alonzo, the officer wrote that J. told the officer that "at about 6:15 p.m. (she knew the time because she said she looked and saw the clock), Alonzo left." Docket No. 25-10 at 10.  During the same interview, she reportedly said that "after the incident was over, they both went to a 7-11" store. *Id.*

In King's *first* trial, J. "testified that she knew the assaults in the garage lasted 1 hour and 15 minutes because she saw a clock." Docket No. 25-10 at 2. J. also stated that King had taken her to a convenience store before assaulting her. *Id.* at 2-3.

5

defense counsel would have had the right to *re*cross-examine the witness on those points. Moreover, Claim 8 relies on trial counsel's declaration that he did not plan to, and does not know why, he did not question J. about the statements, *see* Docket No. 25-10 at 2-3, which is quite different from Claim 2's assertion that the court improperly truncated examination of the witness.

Claim 8 is not just the ineffective assistance of counsel (IAC) overlay to another claim asserted in the original petition; it is a separate legal claim and depends on separate evidence. Unlike *Valdovinos*, King's amended petition does not present "more evidence" of counsel's ineffectiveness. And, unlike *Valdovinos*, nothing in the original petition put respondent on notice in King's case that there would be an IAC claim. The amended petition here seeks to present an analytically distinct claim from anything in the original petition, rather than to buttress an existing IAC claim.

Claim 8 does not relate back to the original petition. Therefore, the next matter to determine is whether the amended petition in which Claim 8 was first asserted was timely filed.

B.   Claim 8 Is Untimely

Petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented a petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Here, the judgment became final and the limitations period began on July 22, 2014, ninety days after the California Supreme Court denied the petition for review on April 23, 2014. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) (direct review period includes the period during which the petitioner could have sought further direct review, regardless of whether he did so). The original petition, filed on December 1, 2014, was filed within the one-year limitations

1  period.  Claim 8 cannot take advantage of the December 1, 2014 filing date because Claim 8 was
2  not presented in the original petition and does not relate back to the claims in the original petition.
3  Therefore, the amended petition had to be filed by the expiration of the limitations period on July
4  22, 2015 for Claim 8 to be considered timely filed.  King missed that deadline by more than two
5  months when he filed his amended petition on September 30, 2015, so unless a different starting
6  date is used or unless he qualifies for substantial tolling, the amended petition is untimely.

7  King urges that the court should use § 2244(d)(1)(D)'s delayed starting date -- rather than
8  the date the judgment became final, *see* § 2244(d)(1)(A) -- for Claim 8.  Under § 2244(d)(1)(D),
9  the one-year limitations period does not start until "the date on which the factual predicate of the
10  claim or claims presented could have been discovered through the exercise of due diligence."  The
11  factual predicate of a claim is based on a habeas petitioner's knowledge of the facts supporting the
12  claim, and not the evidentiary support for the claim.  *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th
13  Cir. 1998).  The time begins "'when the prisoner knows (or through diligence could discover) the
14  important facts, not when the prisoner recognizes their legal significance.'"  *Hasan v. Galaza,* 254
15  F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)).

16  King argues that § 2244(d)(1)(D) supplies the correct limitations period for Claim 8
17  because he did not discover the factual predicate for Claim 8 until July 13, 2015.  He argues that
18  he was not aware that his trial attorney's failure to question J. about the clock and convenience
19  store similarities "was a potential basis for habeas corpus relief" until July 13, 2015, when he
20  learned from attorney Matthew Alger (who was hired by King's mother to help prepare the *pro se*
21  traverse) that King may have an IAC claim.  Docket No. 25 at 2, 4; Docket No. 28 at 2.  King
22  further urges that he "had not been aware of this potential claim because his trial attorney's file
23  was in the possession of Mr. Alger, and before that, the Northern California Innocence Project,
24  whom petitioner had been relying upon to identify his claims."  Docket No. 28 at 2.  King also
25  argues that, once he became aware of the potential IAC claim, he needed to investigate it by
26  asking trial counsel why he did not question J. about the clock and store points.  *Id.*

27  His argument fails to persuade the court.  The nature of King's claim is such that he would
28  have known the important facts supporting the claim at the time of trial, when the attorney did not

7

ask J. about the clock and the store similarities or present other evidence about the topic. King knew or through the exercise of due diligence could have discovered no later than the close of trial that the questions had not been asked and evidence had not been presented on this subject. Section 2244(d)(1)(D) does not provide the correct starting date for the limitations period because using it would result in the limitations period starting *earlier* than the date on which the judgment became final upon the conclusion of direct review.

King's argument also confuses the factual predicate of a claim with the legal claim itself. The limitations period under § 2244(d)(1)(D) would have started when he learned or should have learned of the factual predicate (i.e., the failure to question J. on these points) and not when he learned the legal significance of those facts (i.e., that they might support an IAC claim). *See Hasan*, 254 F.3d at 1154 n.3.

King also does not receive any delayed start for his efforts to obtain a declaration from trial counsel in 2015 about the IAC claim. The petitioner's efforts to gather evidence for a claim do not delay the deadline for him to get to federal court. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) (§ 2244(d)(1)(D) "does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence" that might support a claim); *see generally United States v. Battles*, 362 F.3d 1195, 1198 (9th Cir. 2004) (no delayed start of limitations period under § 2255 for federal petitioner who was not diligent; even though he did not have access to trial transcripts, the facts supporting claims that occurred at the time of his conviction could have been discovered if he "at least consult[ed] his own memory of the trial proceedings"). King therefore does not qualify for a later starting date under 28 U.S.C. § 2244(d)(1)(D).

King attributes his failure to discover the claim to the fact that attorneys who were aiding him had his file. The argument does not help him. A petitioner ordinarily is "bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent." *Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir. 2012) (citing *Maples v. Thomas*, 132 S. Ct. 912, 927 (2012) (using agency principles)). King's argument is similar to the argument unsuccessfully made in *Tse v. McEwen*, 578 F. App'x 666

1  (9th Cir. 2014). In *Tse,* the petitioner had argued that he was entitled to a delayed start under
2  § 2244(d)(1)(D) until he or a fellow prisoner reviewed the file received from his former attorney
3  and realized the attorney's mistake. The Ninth Circuit rejected the argument: "[T]he trial
4  transcripts existed and were in the possession of Tse's appellate and habeas attorneys since at least
5  early 2006. While represented, Tse was bound by what his attorneys knew or could have known."
6  *Id.* (citing *Maples*, 132 S. Ct. at 922). As in *Tse*, the argument that King could not "through the
7  exercise of due diligence" have discovered the factual predicate of the IAC claim until July 2015,
8  when the file "had been in the possession of his own agents for several years, therefore fails." *Id.*
9  Moreover, attorney Alger was not new to this case in July 2015 when he allegedly realized the
10 potential claim existed. Alger also had some role in preparing the original petition, because he
11 mailed the original petition to the court. Even if King was not in a formal attorney/client
12 relationship with attorney Alger or the attorneys at the Innocence Project who held his file and
13 therefore is not bound by agency principles, King would not be entitled to the delayed start under
14 § 2244(d)(1)(D) because the exercise of reasonable diligence certainly would have included
15 obtaining and looking through his own files, if that step was even necessary to find the factual
16 predicate for the IAC claim. King could not avoid the requirement of reasonable diligence by
17 handing off his file to someone else.

18 King's approach essentially asks for the limitations period to start from the date on which a
19 petitioner or someone helping him happens to think of an additional claim to present. This
20 approach improperly sidelines two critical phrases in § 2244(d)(1)(D): that the delayed start is
21 triggered by the discovery of the "factual predicate" and that such limitations period starts when
22 that factual predicate "could have been discovered through the exercise of due diligence," 28
23 U.S.C. § 2244(d)(1)(D). For these reasons, the court rejects the delayed start in § 2244(d)(1)(D),
24 and finds that the limitations period for Claim 8 started on July 22, 2014, when the "judgment
25 became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A).

26 The one-year limitations period can be equitably tolled because § 2244(d) is not
27 jurisdictional. *Holland v. Florida,* 560 U.S. 631, 645 (2010). "'[A] litigant seeking equitable
28 tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights

9

diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). King does not argue that he is entitled to any equitable tolling. Even if the attorney who helped him were negligent in not presenting Claim 8 in the original petition, that would not help him because mere negligence by an attorney does not amount to an extraordinary circumstance warranting equitable tolling of the limitations period. *See Holland*, 560 U.S. at 652 ("a 'garden variety claim' of attorney negligence" does not warrant equitable tolling of habeas statute of limitations period); *see also Towery*, 673 F.3d at 941 (a petitioner ordinarily is bound by his attorney's negligence), *Randle v. Crawford*, 604 F.3d 1047, 1057-58 (9th Cir. 2010) (trial counsel's failure to perfect a timely appeal, post-conviction counsel's incorrect advice as to filing deadline for federal petition and two-month delay in providing client files did not warrant equitable tolling). Counsel's professional misconduct, including attorney abandonment, can "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling," *Holland*, 560 U.S. at 651, but the facts here are nowhere close to fitting in this limited category of particularly bad attorney misconduct, particularly given that the attorneys apparently *did* help in the preparation of a petition that raised seven other claims.

The one-year limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). King receives no statutory tolling because he did not file any petitions for writ of habeas corpus or other collateral review in the California state courts after the limitations period began on July 22, 2014, and before the limitations period expired.

To summarize: The one-year limitations period for Claim 8 started on July 22, 2014, when King's conviction became final upon the conclusion of direct review. King is not entitled to a delayed starting date for the limitations period, nor is he entitled to any tolling of the limitations period. The amended petition containing Claim 8 was not presented until September 30, 2015, more than two months after the statute of limitations deadline passed. Claim 8 is untimely.

### C. No Stay Will Be Permitted

King requests that this action be stayed so that he may return to the state courts to exhaust state court remedies for Claim 8.

There are two kinds of stays available when a petitioner wants to present a claim for which he has not exhausted state court remedies: the *Rhines* stay and the *King/Kelly* stay. A stay under *Rhines v. Weber*, 544 U.S. 269 (2005), "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," the claims are not meritless, and there are no intentionally dilatory litigation tactics by the petitioner. *Id*. at 277-78. The *King/Kelly* stay provides an alternative method to deal with a petitioner who has some unexhausted claims he wants to present in his federal habeas action. Under the procedure outlined in *Kelly v. Small,* 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007), "(1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition." *King v. Ryan*, 564 F.3d 1133, 1134 (9th Cir. 2009) (citing *Kelly*, 315 F.3d at 1070-71). A petitioner seeking to avail himself of the *King/Kelly* three-step procedure is not required to show good cause as under *Rhines. See id*. at 1141.

Neither a *Rhines* nor a *King/Kelly* stay is appropriate here because staying the proceedings will do nothing to eliminate the untimeliness problem for Claim 8. As respondent notes, the point of *Rhines* is to protect a petitioner from the statute of limitations when he has filed a timely-but-mixed petition. *See generally King*, 564 F.3d at 1140 (discussing *Rhines* stay). *Rhines* does not allow a petitioner to revive a time-barred claim. Nor does there appear any reason to grant a *King/Kelly* stay to pave the way for King to present a claim that ultimately must be dismissed as untimely. *See generally King*, 564 F.3d at 1140-41 (discussing statute of limitations risk attendant to *Kelly* stay). Claim 8 cannot be pursued in the federal habeas action because it was not filed before the expiration of the statute of limitations period. Claim 8's unexhausted state does not matter at this point because exhausting the claim will not overcome the untimeliness problem.

King argues that a *Rhines* stay is appropriate because state appellate counsel was ineffective in not presenting the IAC claim in a state court habeas petition, and that ineffectiveness provides "good cause to excuse any procedural default resulting from the delay in raising" Claim 8. *See* Docket No. 25 at 5 (citing *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). His argument is legally correct, but not helpful for the problem he now faces. *Martinez v. Ryan,* 132 S. Ct. 1309 (2012), held that a procedural default does not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding in state court, (a) there was no counsel or if counsel in that proceeding was ineffective and (b) state law required that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding. *Martinez*, 132 S. Ct. at 1316-21. Although ineffective assistance by post-conviction counsel may be good cause for a *Rhines* stay, *see Blake v. Baker*, 745 F.3d 977, 983 (9th Cir. 2014), that rule presupposes that the unexhausted claim for which the *Rhines* stay is sought is not already barred by the statute of limitations. Here, Claim 8 was untimely and a *Rhines* stay won't change that fact. A *Rhines* stay to exhaust that claim will not enable King to overcome the untimeliness problem. In short, *Martinez v. Ryan* allows a petitioner to overcome a procedural bar under certain circumstances, but does not allow a petitioner such as King to avoid the statute of limitations. "[T]he equitable rule in *Martinez* 'applies only to the issue of cause to excuse the procedural default of an ineffective assistance of trial counsel claim that occurred in a state collateral proceeding' and 'has no application to the operation or tolling of the § 2244(d) statute of limitations' for filing a § 2254 petition." *Lambrix v. Secretary, Fla. Dept. of Corr.*, 756 F.3d 1246, 1249 (11th Cir. 2014); *see also Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) ("As our discussion shows, the *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period.").

There is no reason to stay this action for King to exhaust state court remedies for Claim 8. The amended petition in which Claim 8 was first asserted was not filed before the expiration of the statute of limitations deadline. Therefore, Claim 8 is time-barred and leave to file the amended petition is denied. The operative pleading is the original petition, which asserts only Claims 1-7.

1  D.  Respondent Must Prepare An Index Of Witness Testimony

The indexing in the reporter's transcript for King's trial is inadequate for this court's habeas review.  Each of the 18 volumes of the reporter's transcript lists the witnesses whose testimony appears in that volume, but there does not appear to be a single index allowing a reader to look in one place to find out where among the 5000+ pages a witness' testimony may be found.

There also appear to be several ranges of pages missing.  The court only looked at J.'s testimony; J. is called as a witness at RT 1246, and her testimony apparently ends at RT 1916.  Thus, one would expect almost seven hundred pages of testimony, but the record for her testimony presented to this court includes only RT 1236-1268, 1501-1544, and 1801-1916.  It may be explained somewhere else in the transcript why RT 1269-1500 and RT 1545-1800 are missing, but that is not clear from a brief examination of the portion of the record that contains J's testimony.

Accordingly, no later than **March 14, 2016,** respondent must provide one index to the reporter's transcript for the entire trial, showing the page(s) on which direct examination, cross-examination, re-direct examination and re-cross examination of each witness starts.  For any ranges of pages not in the reporter's transcript, respondent should briefly explain why they are not included.  This does not need to be a complicated production -- the court just needs a navigation aid.

### CONCLUSION

Petitioner's motion for leave to file an amended petition and for a stay of the proceedings is DENIED.  (Docket No. 25.)  Claims 1-7 are the only claims that will be considered.  The parties have fully briefed those claims.  Once respondent files the index, the original petition will be taken under submission.

**IT IS SO ORDERED**.

Dated:

_____
SUSAN ILLSTON
United States District Judge